Ms. Alves, we're pleased to hear from you. Good morning, Your Honors. May it please the Court, my name is Nefertiti Alves, and I represent the petitioner, Mr. Cyrille Kouambo, in the instant petition. The issues before the Court today are two. The first issue before this Court is whether the Court has jurisdiction to review the instant petition. The second issue before the Court is whether the Board of Immigration Appeals erred in their decision to state that Mr. Kouambo had resettled in the Republic of Congo and was therefore ineligible for asylum. We argue that jurisdiction is proper in this instance because the Board of Immigration Appeals has affirmed a final order which was issued by the immigration judge, and we also erred in finding that the petitioner had resettled in the Republic of Congo. Let me just go to the jurisdictional briefly. The Board remanded, right, to have this investigation done? Yes, Your Honor. And if that investigation resulted in negative information to your client, that would change things? What would be the impact of that? The impact of that would be that it would not necessarily be a final order, and he would no longer be able to move forward in this circumstance. However, we argue that your sister circuit courts have held that although a decision was still outstanding in terms of voluntary departure, for instance. Well, there's a split, right? The Seventh Circuit goes your way. So it was sent back in this case? Yes, Your Honor. It was sent back to the immigration court. And what happened at the remand? And ultimately, the court found that his background was clear, and. And then what happened? Was that appealed to the BIA? And no, that decision was. The removal order wasn't appealed? The removal order was appealed to the Board of Immigration Appeals. Is that where it is now? Right now, no, it is not. Where is it now? Right now, we are before the court in terms of reviewing. No, I'm talking about the proceeding on the remand. There's some suggestion that it was sent back. There was nothing found negative in his background. Exactly, and the order was affirmed. And then wasn't there, is there some indication that that order was appealed to the BIA, the removal order? It was affirmed, Your Honor. That's what I have, is that a decision was consistent with what the immigration judge has stated before. I understand, but was there an appeal taken from the immigration judge on the removal order? No, Your Honor, none. There's no appeal pending before the BIA now? No, Your Honor. Okay, so what happens to that immigration judge's order? Is there an order entered there? Yes, Your Honor. What does it say? It says that the order that was entered stated that it affirmed the decision of the immigration judge previously, and it stated that his background was clear as well. And then did it say he's ordered removed? It said that he is ordered removed to Central African Republic, however, he was also granted withholding of removal. Okay, now isn't that the final order? That is the final order, yes, Your Honor. Well, but that's not before us. That was entered on remand. Yes, Your Honor, however, there was a final order that was issued prior to that because How could it be prior to that when it was subject to change on the remand and then the immigration judge issued a final order on remand after finding no adverse background information? Because according to 8 U.S.C. 11011, that's the statute that actually states what an order of removal is, and within that, it states that an administrative officer, once they come to the conclusion that an alien is either deportable or makes a decision that an alien should be deported, that decision becomes final once the Board of Immigration Appeals affirms it. And in this instance, the Board of Immigration Appeals affirmed that decision of the immigration judge's decision, which was dated July 17, 2017. So our argument is that... I understand your argument, but that doesn't come to grips with the problem is the BIA didn't just affirm. The BIA affirmed and remanded, and you just told me that on remand, the removal could be changed. Yes, Your Honor. And so based on what the immigration judge found, he then re-entered the removal order, didn't he? He did re-enter the removal order, but the fact still remains that a decision was issued... Why isn't that the final order? Because the first one that's on appeal to us was subject to change on the remand. It wasn't changed, and there was a now, the final order was entered by the immigration judge, and that, and you didn't appeal that to the BIA, that second order? I believe we did not appeal that second order to the BIA, but I will check the record to... Isn't that pretty important? Yes, Your Honor, I believe we did not appeal that, but we still argue that in terms of the decision that is final in this case, it would be... If we held that there was a final order of removal in the face of a remand. Yes, Your Honor, but you would be in alignment with the Ninth Circuit in terms of... You would be what? I'm sorry, I didn't hear. But you would still be in consistency with what the Ninth Circuit held in Hussam F. versus Sessions, which found that although the decision was... The government argued that the decision was not final, the court still found that a final order was issued in that case, and jurisdiction was proper. So, there are other cases in which... I thought that was a Ninth Circuit decision that had a remand from the BIA to the IJ. Under circumstances such as this, in order to have a background check, and that the Ninth Circuit said there was no final removal under those circumstances. Yes, Your Honor. Yes, Your Honor. I had some... I guess what we did in chambers is we tried to find out what happened, and apparently the IJ issued a new order on October 3rd, 2018. Yes, Your Honor. And that order was appealed on November 2nd to the BIA and remains pending there. Now, doesn't that just take the case away from us? No, Your Honor, because... If that's true. If that's true, Your Honor, we would argue... I'm sort of surprised you don't know that. Apologies, Your Honor. But in this instance, we would argue that that still doesn't change this circumstance, only because under 8 U.S.C. 11.0.11, the issue is whether a final order was actually issued by an immigration judge. And in this instance, the immigration judge made a decision on July 17th, and that became final when the Board of Immigration... Does that affect the question whether it's final when he included a remand order? In other words, the order you keep saying is final... Yes, Your Honor. You're just saying it's final. The question before us is whether it is final. Yes, Your Honor. And the question is raised because the BIA didn't just issue an order dismissal. It also remanded. Understood. Didn't it? Yes, it did. And it remanded under a circumstance where it could have changed the finality of the order it entered. Yes, Your Honor, however... And then the immigration judge issued another order on October 3rd. Yes, Your Honor. And that was appealed to the BIA, and the BIA has it now. Yes, Your Honor. Okay, now, if the BIA has it now, aren't we premature in ruling now? Shouldn't we wait to see what the BIA does? We would argue that despite that information, that this court would still have jurisdiction to hear the instant petition because it would just allow for efficiency in terms of judicial resources. Well, that seems counterintuitive. I mean, we'd be hearing the case twice instead of once, and it seems more efficient to wait until the BIA resolves the second appeal and take all the issues up in one hearing. Yes, Your Honor, I do understand your position, and we still feel that... What if the BIA reverses the IJ? If the BIA reverses the IJ's decision, then a final order would be the immigration judge's decision, which was dated... No, it wouldn't. There would be nothing before us. If the BIA now reverses and says, oh, there is some information there, the immigration judge ignored this or didn't give this the right count or whatever and sent it back, and it's still in litigation, the order's up for grabs, the removal order. I understand what you're saying, Your Honor. Well, you can go ahead. I may ask my questions. I understand where we are. Okay. And we would still argue moving forward to the issue of resettlement in terms of... I'll just mention one other thing with respect to jurisdiction. I think the remand order here was not just a pro forma thing. It was a remand order for background investigation. Yes, Your Honor. And a background investigation and everything has obviously got to be something that's very important to our immigration policy and to achieving a complete record in a case because that allows the fact finder, the IJ or the BIA, to have a complete and whole picture of the individual involved. And so this was a remand for a very substantive reason. That's why I think we have to await the results of that and get a complete picture before us before we can review anything. That's my concern. But I didn't mean to wail you on your discussion of resettlement. Understood, Your Honor. Just briefly, in terms of resettlement, in terms of asylum, if an alien is found to have firmly resettled, they are not eligible for asylum. And an alien is found to have firmly resettled. What advantages does asylum give you over the withholding of removal? Well, if an alien is granted asylum, they're allowed to stay in the U.S. versus withholding of removal, which the service is still able to deport the alien to a third country, but it just can't be. So asylum is a more permanent protection. Exactly, Your Honor, exactly. And in terms of the issue of firm resettlement, if a third country has offered the alien any type of citizenship or permanent residence before they enter the U.S., then they have firmly resettled in another country, and asylum would not be proper. How long was he in the Republic of Congo? He was in the Republic of Congo for 12 years. And he got a degree there? He did get a degree there. He got his medicine there? Yes, he did. He got a job and he rented a house? Yes, he did. But his facts are very similar to the facts in Siong. Tell me what the facts are that's why he was not resettled. Sure. He wasn't resettled because he was consistently receiving threats, despite the fact that— Because he was engaging in political speech? Yes, Your Honor. That's prohibited in the Republic of Congo, right? It's not completely prohibited in the Republic of Congo, but— Apparently the people who told him, they thought he was violating the law, didn't they? They did think he was, but it's closed. It's not possible to everybody. Yes, Your Honor. However, the fact still remains that he was threatened because of his political opinion, and we would argue that regardless of where he went in the Republic of Congo, he was threatened because of his political opinion. He was never offered permanent residence in the Republic of Congo. Do you think that if a country has a law of general applicability that everybody can't speak, express political party opinions, but all otherwise, he has a family there, he's married there, he has a job, he's rented, he's been there 12 years, has not been kicked out for any of this, you think that he's not firmly settled? It was not a safe haven for him, though. And so because he was consistently attacked, the fact that he was consistently threatened, it was not a safe haven for him, and he has not firmly resettled because of that, Your Honor. He was still persecuted in that country. He was still being threatened for his political opinion, and because of that, we argue that this court should find that the Board of Immigration Appeals has erred in their decision that he has resettled, firmly resettled in the Republic of Congo and also signed jurisdiction. But the standard of review here is substantial evidence? Yes, Your Honor. And in terms of the evidence that you would consider, you would consider the length of time that he has spent in the country, the employment opportunities that he has, and whether or not he was ever off. Even if we were to agree with you in the first instance, that would be a different question from reversing the BIA on an absence of substantial evidence, wouldn't it? Yes, Your Honor. Even if we might agree with you, were we the trier of fact? Yes, Your Honor. And if you have no further questions, I would like to reserve the room. Thank you, and you have some time for rebuttal as well. Thank you, Your Honor. Mr. Shore, let's hear from you. Good morning, Your Honors. May it please the Court, my name is David Shore, and I represent the Attorney General of the United States. The petitioner in this matter, Mr. Kwambo, had a full and fair opportunity to present his asylum claim before an asylum officer, to renew it before an immigration judge, and to present that on appeal to the Board. At each level, he was found ineligible for asylum. The issues before the Court are whether the Court lacks jurisdiction in this matter, given the Board's remand for further proceedings, and alternatively, whether substantial evidence supports the finding that Mr. Kwambo had firmly resettled. First is to the jurisdictional question. A final order of removal must exist as a conditioned precedent for jurisdiction under the statute. Maintaining, to the degree that we can, the uniformity of immigration law across the country, and not having to be one law, one place, and one law, the other place. So, as I understand it, the Fifth and Ninth Circuits, at least, were confronted with the position of where there was a remand from the BIA to the IJ for a background investigation. And they held that in those circumstances, there was no final order of removal sufficient to confer jurisdiction. So, if we were to say that there was a final order of removal, it would at least place us in conflict with those two circuits. Am I right? Yes, Your Honor. And the courts that have found a remand for background checks is not a final order of removal, and have done so for good reason. Because, as the court noted, things can happen on remand. The decision is not yet, the board's decision is not yet ripe for review, given the potential of developments on remand. So, this is a remand for the same issue, that is, are you eligible for withholding of removal? So, the outcome of those proceedings directly bears on the matter that would be before the court. Well, I think the counsel for the petitioner is suggesting that it probably is a foregone conclusion that there's going to be an order withholding or granting, withholding of removal in the same way that there was before the remand, and that that would give her the opportunity to challenge the unfavorable asylum determination. So, I think it's a little bit like a foregone conclusion argument. Is that right? Well, but that isn't necessarily true, Your Honor, even if that could be the case here. So, there's board precedent, a case cited in the brief matter of MD, which says when the immigration judge reacquires jurisdiction over the case, one, there's no final order of removal, but two, if the party says, hey, I've got new and previously unavailable evidence going to the issue that the board decided, like asylum, the immigration judge can basically reopen the entire thing based on that new and previously unavailable evidence about the asylum claim itself. So, it isn't necessarily a foregone conclusion in every case. So, Would that be the case for remand on voluntary departure? Well, so, well, potentially, yes, Your Honor. Now, voluntary departure has been carved out by this court, by the Ninth Circuit, because voluntary departure, a remand for voluntary departure, it doesn't address whether or not you will be removed, but how, right? Whether you'll go voluntarily or you'll be removed. You're suggesting even in that circumstance, the EIJ might be open to receiving new evidence. So, why wouldn't that be? That's correct. I mean. Well, the court has, in, in, I don't know that this argument was specifically presented to the court in, in the earlier voluntary departure cases, but it is as a factual matter, correct, that when the immigration judge reacquires jurisdiction, the immigration judge can reopen the case. It's not reopening as a term of art, but can consider new evidence if it was. So, let me ask you this. So, with the court, the EIJ, assuming that voluntary departure goes off without a hitch, the EIJ would sign a new order saying petitioner's order removed, but he's now leaving voluntarily. Is that what he would do? In the case of a remand for voluntary departure? Yes, Your Honor. Yes. If it's granted. Yes. Okay. So, it sounds like even that order might not be a final order. That was the government's original position. You lost on that one. Yes, Your Honor. But, you know, as the Ninth Circuit has held in an en banc decision, a remand for any purpose except for voluntary departure under their case law by the board negates finality. It all comes down to not hearing the case in dribbles, doesn't it? Yes, Your Honor. Certainly, the statute, you know, contemplates, 1252, contemplates that there's a final order and then review occurs, as opposed to piecemeal review of interim decisions, which is exactly what this board decision is. In the status of the current case, I mean, the information I had was acquired from some hotline or something, and I can't vouch for it, but it sounds to me like it's at the Board of Immigration Appeals right now. Well, the hotline would provide the most up-to-date information. I was not aware that an administrative appeal was filed with the board. My understanding was that the immigration judge had entered the voluntary departure order on October 3, but I apologize for not, and I would have checked by calling the hotline before coming here this morning. The hotline is sort of accurate. I think the information we got from the hotline was an appeal on November 2, but I. I would defer to that information, certainly. Well, I'm not vouching for it. That information is available to, you know, for individuals to check the status of their cases. That information, in my experience, has been across the board accurate. Could you just send us a letter confirming that or not? Absolutely. Yes, Your Honor. And the government's position, Your Honors, is not that, you know, if we have a situation where there's remand for background checks, and the background checks come back clean, and the IJ then reenters an order, you know, saying your order removed, but I'm granting withholding of removal again. The government's position is that there's no need for an unnecessary administrative appeal to the board again where the issues have already been exhausted and decided by the board the first time around. Rather, a case cited in a brief by the Second Circuit, Chepina, is directly on point. When that immigration judge's decision is final, if the individual waives appeal, or if the time to file appeal is lapsed and no appeal is taken, they may then, that would then start the 30-day clock for filing a petition for review under 1252B1. So there's no need to go back to the board a second time in order to, if you want to seek review of the board's earlier determination. Well, I don't want to make this more complicated than it is, because it seems to me at bottom it rests on a very simple foundation, which is that the statute requires a final order of removal, and there's no final order of removal where there's been a remand for further proceedings, the further proceedings of which may or may not alter the earlier order withholding removal. So it's just, I mean, to me, it's just that straightforward. Yes. So do you have anything further? No, Your Honor. I want to say a word about ripening, though the Petitioner hasn't argued that a prematurely filed petition can ripen. And certainly if there's an appeal pending before the board now, then it hasn't ripened into a final order. But ripening is, the government's position is contrary to the statute, which contemplates the- and a final order of removal is a discernible, clear rule. Yes, Your Honor. And it would be inconsistent with Supreme Court precedent, Stone v. INS, which contemplates a final order of removal and then a petition for review, you know, any petition for review would be then filed. And if there's a later denial by the board of a motion to reopen or reconsider, the Supreme Court has said, well, if you want review of that, you have to file a second petition for review. Now, if petitions can be filed prematurely and ripen, there'd be no need for that second petition for review. I want to ask my co-panelists if they have further questions of you, Judge Niemeyer. Judge Diaz. We have no further questions. Thank you. May I turn to the merits or is that- I think the merits have been very carefully canvassed in the brief. You pointed out all the factors that constitute substantial evidence with respect to the denial of asylum. I mean, would you do anything other than repeat those factors? No. Well, I just do want to emphasize just one point, if I may, very briefly, Your Honor. I apologize. So a well-founded fear, a claim of well-founded fear does not negate a finding of firm resettlement. Neither of the exceptions refer to a fear of persecution as, you know, negating a finding of firm resettlement, where the inquiry in firm resettlement is not just generally are you safe. It's has there been an offer or is resettlement available to you? Because historically the Board explained in the matter of AGG that individuals are excluded from obtaining refugee status if they've acquired a new nationality. And this court in Mussie v. INS cited in the brief there was an argument that by the petitioner, hey, I was physically assaulted by neo-Nazis in Germany, so therefore I haven't firmly resettled. This court rejected that argument, saying no. When we look at the exceptions, we look at what restrictions the government applied to your residency, not third parties. And it was exclusively third parties here who allegedly threatened the petitioner, not the government. And, in fact, I believe at page 25 of the record, the petitioner admitted that he never complained to the police in the Republic of Congo about those private threats from third parties. So I just wanted to make that point. We thank you very much. Thank you, Your Honor. That's a good point to make. We appreciate it. Ms. Alvarez, you have some rebuttal time. Briefly, Your Honors, just to the point of the fact that the petitioner never spoke to the police in terms of the threats that he was receiving, he was in complete fear and he didn't know what to do in terms of reaching out to the police. And he just went into hiding. He restricted his movements, which further supports the fact that he fits into the second exception for firm resettlement. In terms of firm resettlement, the second exception to it comes up when an individual has settled in a third country. However, their residence was substantially and consciously restricted. And we argue that that's what happened to the petitioner in this instance. Does that exception require restricted by the government? Yes, it does. They were from outside the country, right? They were from individuals outside of the country. However, the Republic of Congo offered one of these individuals a bodyguard and was essentially making sure this individual was protected while in the Republic of Congo. And for that reason, we would argue that essentially the government was helping this individual and basically turning a blind eye to the threats that he was directing towards the petitioner. And for that reason, we would say that this has come from the government. But even if the court feels that these threats have not come from the government in Siong versus INS, that individual had been in France for 13 years. He had children in France. He had moved throughout France multiple times because of threats. And the Ninth Circuit found that he had not firmly resettled because of the threats that he was receiving and because France was not a safe haven for him at that point in time. They did consider the issue of the second exception to firm resettlement. However, ultimately, they found that he had not firmly resettled because the country was not a safe haven for him. And we argue that the same situation exists for the petitioner in this circumstance as well. All right. Anything further? No, and just in terms of whether or not the case has been remanded, has been appealed to the board, similar to opposing counsel, we were unaware that that had occurred. And so I just wanted to put that on the record. And if my client did not mention that, no, he did not. And so I just wanted to mention that to the court. So was it or was it not appealed? We were not aware that it was appealed to the board. We were aware that it was remanded and that a decision was issued in October. But we were not aware that it was remanded to the board and nor was opposing counsel. But was it appealed to the board? No. You're saying it was not appealed or you don't know? We're saying that we were not aware that it was appealed. The question to you was whether it was appealed. And as far as we know, it was not appealed. You don't represent him below? Does he have a different lawyer below? No, he does not, Your Honor. So who would have filed the appeal? Exactly, which is why we believe it was not appealed. Did you get a copy of the order? Yes, we did, Your Honor. The October 3rd order? Yes, we did, Your Honor. All right. Thank you very much. Thank you. We'll adjourn court and come down and greet counsel. This honorable court stands adjourned until 3 o'clock this afternoon. God save the United States and this honorable court.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, Albert Diaz